UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

JOE HAND PROMOTIONS, INC.,

               Plaintiff,

       - vs -                     CASE NO.: 3:22-cv-00246-KC

YOU DROPPED SOMETHING
ENTERPRISES, LLC, *et al.,*

               Defendants.

**PLAINTIFF, JOE HAND PROMOTIONS, INC.'S
MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS, YOU DROPPED
SOMETHING ENTERPRISES, LLC, d/b/a UNDISPUTED CRAFT HOUSE, DARRELL
A. DAUGHTRY, and CHRISTOPHER MADRID, a/k/a CHRIS MADRID,
<u>AND SUPPORTING BRIEF</u>**

1

# **TABLE OF CONTENTS**

**Page**

STATEMENT OF THE ISSUES ............................................................................................. 6

A.    INTRODUCTION ......................................................................................................... 7

B.    FACTUAL BACKGROUND ....................................................................................... 8

C.    EVIDENCE .................................................................................................................. 9

D.    STATEMENT OF RELEVANT FACTS .................................................................... 9

E.    ARGUMENTS & AUTHORITIES ............................................................................ 11

    1.    The Communications Act ................................................................................ 11

    2.    Statutory Damages Under 47 U.S.C. § 605(e)(3)(C)(i)(II)................................ 13

    3.    Damages for Willful Act Under 47 U.S.C. § 605(e)(3)(C)(ii).......................... 17

F.  ATTORNEY'S FEES AND COSTS ........................................................................... 20

G.  CONCLUSION ........................................................................................................... 21

H.  PRAYER ..................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*American Television and Communications Corp. v. Floken, Ltd.*, 629 F. Supp. 1462, 1466 (M.D.Fla. 1986) .................................................................................................................... 16

*Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1544 (S.D.N.Y. 1991) .......... 15

*Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 850 (11th Cir. 1990) ............................................................................................................................... 13, 20

*Cox Cable Cleveland Area, Inc. v. King*, 582 F. Supp. 376, 381 (E.D. Ohio 1983) ................... 16

*Entertainment by J&J, Inc. v. Al-Waha Enterprises, Inc.*, 219 F. Supp.2d 769, 776 (S.D. Tex. 2002) ............................................................................................................................... 15, 20

*Entertainment by J&J, Inc. v. Al-Waha Enterprises, Inc.,* No. H-01-2514, 2002 U.S. Dist. LEXIS 16247, at *17 (S.D.Tex. July 24, 2002) ................................................................................. 13

*Entertainment by J&J, Inc. v. Tia Maria Mexican Restaurant & Cantina, Inc.*, 97 F. Supp.2d 775, 778-779 (S.D.Tex. 2000)(Gilmore, V.) ............................................................................ 20

*F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952)........................ 14, 15

*Frame v. S-H, Inc.*, 967 F.2d 194, 205 (5th Cir. 1992)................................................................. 12

*J&J Sports Prods., Inc. v. Molina & Reyes Enters., LLC*, No. SA-17-CV-278-XR, 2017 WL 10841353, at *2 (W.D. Tex. Nov. 29, 2017) ......................................................................... 21

*J&J Sports Productions, Inc. v. Papagallos 1, Inc.*, No. A-08-CA-691-SS (W.D. Tex. April 17, 2009)(Sparks, J.) (Order) (Doc. No. 13) ............................................................................... 19

*Joe Hand Promotions, Inc. v. Macias,* 2012 WL 950157 at *2 (Memorandum and Order) (S.D.Tex. March 19, 2012)(Atlas, J.) .................................................................................... 11

*Joe Hand Promotions, Inc. v. Malespin*, 2001 U.S. Dist. LEXIS 2037, at *9-10 (S.D.N.Y. Feb. 27, 2001)(Nathaniel, J.) ......................................................................................................... 18

*Joe Hand Promotions, Inc. v. Maupin*, 2018 WL 2417840, at *6 (E.D.N.Y. May 25, 2018) ......12

*Joe Hand Promotions, Inc. v. Rascals Cafe, LLC*, No. 4:11-2135-TLW, 2012 WL 4762142, at *6 (D.S.C. Aug. 31, 2012) ................................................................................21

*Joe Hand Promotions, Inc. v. SNP Hookah Lounge and Grill LLC, et al.*, No. 4:18-cv-01666 (Memorandum and Order, Doc. #39)(S.D. Tex. July 31, 2019)(Atlas, J.) ...................................21

*KingVision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp.2d 438, 442 (S.D.N.Y. 2001).. 18

*KingVision Pay-Per-View, Ltd. v. Lake Alice Bar*, 168 F.3d 347, 349 (9th Cir. 1999)................ 11

*KingVision Pay-Per-View, Ltd. v. Scott E.'s Pub, Inc.*, 146 F. Supp.2d 955, 959-60 (E.D.Wis. 2001) ................................................................................................. 20

*KingVision Pay-Per-View, Ltd. v. Valles*, EP-CA-179-DB, 2001 U.S. Dist. LEXIS 24268, at *9 (W.D. Tex. March 30, 2001)(Briones, J.) ................................................. 18

*Lauratex Textile Corp. v. Allton Knitting Mills, Inc.,* 519 F. Supp. 730, 732 (S.D.N.Y. 1981).. 13, 20

*Lottie Joplin Thomas Trust v. Crown Publishers, Inc.,* 592 F.2d 651, 657 (2d Cir. 1978) .......... 13

*Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200 (5th Cir. 1975) ........................... 9

*ON/TV of Chicago v. Julien*, 763 F.2d 839, 844 (7th Cir. 1985).................................................. 17

*ProStar v. Massachi*, 239 F.3d 669, 675 (5th Cir. 2001)............................................................. 20

*Quincy Cablesystems, Inc. v. Sully's Bar, Inc.*, 640 F. Supp. 1159, 1161 (D. Ma. 1986) ........... 17

*Time Warner Cable v. Googies Luncheonette, Inc.,* 77 F. Supp.2d 485, 490 (S.D.N.Y. 1999).. 12, 18

*TransWorld Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985) .............................................. 17

*U.S. v. Scott*, 783 F. Supp. 280, 281 (N.D.Miss. 1992) .......................................................... 7, 13

## STATUTES

17 U.S.C. § 504(c)(1) .................................................................................................. 14

28 U.S.C. § 1920 ...................................................................................................... 20, 21

47 U.S.C. § 553 .................................................................................................... 7, 11, 12

47 U.S.C. § 605 ............................................................... 6, 7, 8, 11, 12, 13, 20, 21

47 U.S.C. § 605(e)(2) ................................................................................................... 6

47 U.S.C. § 605(e)(3)(B)(iii) ............................................................................... 6, 20

47 U.S.C. § 605(e)(3)(C)(i)(II) .......................................................................... 6, 13, 22

47 U.S.C. § 605(e)(3)(C)(ii) ................................................................................ 6, 17, 22

47 U.S.C. § 605(e)(4) ................................................................................................... 7

Copyright Act of 1976, 17 U.S.C. § 101 et seq. ................................................... 14, 15

Federal Communications Act of 1934 ......................... 6, 7, 9, 11, 12, 13, 14, 19, 20, 21

## STATEMENT OF THE ISSUES

1. Whether the entry of a default judgment against Defendants, You Dropped Something Enterprises, LLC, d/b/a Undisputed Craft House, Darrell A. Daughtry, and Christopher Madrid, a/k/a Chris Madrid (collectively, "Defendants") is appropriate.

2. Whether Defendants violated Title 47 U.S.C. § 605 by exhibiting the Program (defined in ¶ 5 of this Motion) at the Establishment (defined in ¶ 5 of this Motion) without payment to or authorization from Plaintiff.  *See* 47 U.S.C. § 605.

3. Whether Defendants' unauthorized exhibition of the Program (defined in ¶ 5 of this Motion) was willful and for the purposes of direct or indirect commercial advantage or private financial gain.  *See* 47 U.S.C. § 605(e)(2).

4. Whether $30,000.00 is the appropriate amount of statutory damages for Defendants' willful violation of the Communications Act. *See* 47 U.S.C. §§ 605(e)(3)(C)(i)(II) and 605(e)(3)(C)(ii).

5. Whether Plaintiff's request for attorney's fees and costs is reasonable.  *See* 47 U.S.C. § 605(e)(3)(B)(iii).

**PLAINTIFF, JOE HAND PROMOTIONS, INC.'S
MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS, YOU DROPPED
SOMETHING ENTERPRISES, LLC, d/b/a UNDISPUTED CRAFT HOUSE, DARRELL
A. DAUGHTRY, and CHRISTOPHER MADRID, a/k/a CHRIS MADRID,
<u>AND SUPPORTING BRIEF</u>**

Plaintiff, Joe Hand Promotions, Inc., by and through its attorney, files this its Motion for Default Judgment against Defendants, You Dropped Something Enterprises, LLC, d/b/a Undisputed Craft House, Darrell A. Daughtry, and Christopher Madrid, a/k/a Chris Madrid, and Supporting Brief ("Motion"), which is supported by the following brief and the attached exhibits.

## A.  INTRODUCTION

1.      This is an "Anti-Piracy" case under the Federal Communications Act of 1934, as amended (the "Communications Act").  The Communications Act protects against the piracy of radio and television signals.  *See* 47 U.S.C. §§ 553[1] and 605.[2]

2.      "In general, 'piracy' refers to the decoding or decryption of scrambled programming without the authorization of the programmer nor payment for the programming." *U.S. v. Scott*, 783 F. Supp. 280, 281 (N.D.Miss. 1992)(reviewing the legislative history of § 605(e)(4)).

---

[1] 47 U.S.C. § 553 provides, *inter alia*, that:
No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

[2] 47 U.S.C. § 605 provides, *inter alia*, that:
. . . No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

3. By virtue of their default, Defendants have admitted to committing piracy against Plaintiff.

4. By this Motion, Plaintiff seeks the entry of a default judgment against Defendants for $30,000.00 in statutory damages for their willful violation of 47 U.S.C. § 605, plus interest, costs, and attorney's fees.

**B. FACTUAL BACKGROUND**

5. On July 15, 2022, Plaintiff, Joe Hand Promotions, Inc. (hereinafter "Plaintiff" or "JHP") filed its Complaint [*See* Doc. #1] against Defendants, You Dropped Something Enterprises, LLC, d/b/a Undisputed Craft House, Darrell A. Daughtry, Christopher Madrid, a/k/a Chris Madrid, Jerome Isaac, and Sergio Lopez complaining of the unauthorized and illegal interception and/or receipt and exhibition of the broadcast of the *Manny Pacquiao vs. Keith Thurman* boxing match, including all undercard bouts and the entire television broadcast, telecast on July 20, 2019 (the "Program"), at their commercial business known as Undisputed Craft House located at 1881 Saul Kleinfeld, El Paso, Texas 79936 (the "Establishment") without paying the sublicense fee to Plaintiff.

6. On October 27, 2022, Plaintiff advised the court of the military status of Defendant, Jerome Isaac. *See* Doc. #14.

7. On October 27, 2022, Defendant, Sergio Lopez was voluntarily dismissed. *See* Docs. #13, #16.

8.      On November 16, 2022, default was entered against Defendants, You Dropped Something Enterprises, LLC, d/b/a Undisputed Craft House ("LLC"), Darrell A. Daughtry ("Daughtry"), and Christopher Madrid, a/k/a Chris Madrid ("Madrid"). *See* Doc. #18. The LLC, Daughtry, and Madrid shall be referred to collectively as "Defendants."

9.      By this Motion, JHP hereby seeks the entry of a default judgment against Defendants for statutory damages in the amount of $30,000.00 under the Federal Communications Act of 1934, as amended, plus interest, costs, and attorney's fees.

## C. EVIDENCE

10.     In support of this Motion, Plaintiff files its Appendix in Support of Plaintiff, Joe Hand Promotions, Inc.'s Motion for Default Judgment against Defendants, You Dropped Something Enterprises, LLC, Darrell A. Daughtry, and Christopher Madrid, a/k/a Chris Madrid, and Supporting Brief, which shall be incorporated by reference herein in full.

## D. STATEMENT OF RELEVANT FACTS

11.     Pursuant to Plaintiff's Complaint[3] and the evidence presented, the following facts are established as a matter of law by default:

   a.   The LLC conducted business as Undisputed Craft House and owned, operated, maintained, and controlled the Establishment on the date of the Program. *See* Plaintiff's Complaint, Doc. #1 at ¶ 4 and Appendix, Exhibit A.

   b.   On the date of the Program, Daughtry and Madrid were owners, members, managers, officers, and/or principals of the entity owning and operating the Establishment, had a right and ability to supervise the activities of the Establishment, and had an obvious and direct financial interest in the activities of the Establishment. *See* Plaintiff's Complaint, Doc. #1 at ¶¶ 5-6 and Appendix, Exhibits A, C, C(3), C(4), and C(5).

---

[3] By Defendants' default, the Court should accept the well pleaded allegations of facts in the Complaint. *See* e.g., *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200 (5th Cir. 1975).

c.   Plaintiff is in the business of marketing and licensing commercial exhibitions of pay-per-view prizefight events. *See* Appendix, Exhibit B at ¶ 4.

d.   Plaintiff possessed the proprietary rights to exhibit and sublicense the right to exhibit the Program for businesses such as the Establishment. *See Id.* and Appendix, Exhibit B(1).

e.   Through an agreement with the licensor of the Program, Plaintiff was licensed to distribute and authorize the public exhibition of the Program at commercial locations such as bars, restaurants, nightclubs, and other commercial establishments throughout the State of Texas. *See* Plaintiff's Complaint, Doc. No. 1 at ¶¶ 3, 9-11 and Appendix, Exhibits B at ¶ 4 and B(1).

f.   In Texas, the Program was legally available to commercial establishments such as the Establishment only through an agreement with Plaintiff. *See Id.*

g.   The interstate satellite transmission of the Program was electronically coded or scrambled and was not available to or intended for the free use of the general public on the scheduled date of the Program. If a commercial establishment was authorized by Plaintiff to receive the Program, Plaintiff would either authorize the establishment's cable or satellite television provider to release the Program to the establishment, depending on the establishment's equipment and provider, or authorize the receipt of the Program via an internet stream by authorizing the internet platform to enable the content on a customer account provided by Plaintiff whereby Plaintiff would provide the establishment with a username and password to access the Program. *See* Plaintiff's Complaint, Doc. #1 at ¶ 9 and Appendix, Exhibit B at ¶¶ 5-6, 8, 10-11.

h.   At no time did the Establishment ever lawfully license the Program from Plaintiff to exhibit to its patrons.  The Establishment was not authorized by Plaintiff nor did it pay Plaintiff the proper commercial sublicense fee to exhibit the Program.  *See* Appendix, Exhibit B at ¶ 9.

i.   Authorized commercial establishments that contracted with Plaintiff were required to pay to Plaintiff a sublicense fee to receive the Program. This sublicense fee was based on the occupancy/capacity of an establishment. According to the Boxing Piracy Affidavit of Edith M. Prado, the Establishment had an approximate occupancy/capacity of 75 people.  According to the Rate Card, the fee for a legal broadcast would have been $1,475.00. In this case, the commercial sublicense fee to broadcast the Program was not paid.  *See* Appendix, Exhibits B at ¶¶ 8-9, B(2), and B(3).

j.   On the night of the Program, Plaintiff's Auditor, an eye-witness, entered the Undisputed Craft House establishment located at 1881 Saul Kleinfeld, El Paso, Texas and observed the Program being broadcast on multiple televisions, counting approximately 40-55 people in the Establishment at that time.  *See* Appendix, Exhibits B at ¶ 9 and B(3).

k.   Joseph P. Hand, III (*also known as* Joe Hand Jr.), Plaintiff's President, believes that Plaintiff's programming was not and cannot be mistakenly, innocently, or accidentally intercepted in the El Paso, Texas area.  Accordingly, Defendants could not have obtained the transmission of the Program had Defendants not undertaken specific wrongful actions to intercept and/or receive and exhibit the telecast of the Program. *See* Exhibit B at ¶¶ 10-12.

l.   The broadcast of the Program was advertised on the entrance door of the Establishment's bathroom and on social media.  *See* Appendix, Exhibits B(3), C, and C(1).

### E.  ARGUMENTS & AUTHORITIES

**1.  THE COMMUNICATIONS ACT**

12.    The unauthorized interception and broadcast of cable or satellite transmissions violates 47 U.S.C. §§ 553 or 605.  Accordingly, unlawful interception or receipt and broadcast of the signal of the Program are violations of the Communications Act.

13.    "The FCA [Federal Communication Act] is a strict liability statute, and the plaintiff is required only to prove the unauthorized exhibition of the intercepted transmission." *See Joe Hand Promotions, Inc. v. Macias,* 2012 WL 950157 at *2 (Memorandum and Order)(S.D.Tex. March 19, 2012)(Atlas, J.)(referencing *KingVision Pay-Per-View, Ltd. v. Lake Alice Bar*, 168 F.3d 347, 349 (9th Cir. 1999)(the finding that bar had, without authorization, shown a preliminary bout required judgment in favor of the plaintiff)).

14.    On the date of the Program, the LLC conducted business as Undisputed Craft House and owned, operated, maintained, and controlled the Establishment; on the date of the Program, Daughtry and Madrid were owners, members, managers, officers, and/or principals of the entity

operating the Establishment with a right and ability to supervise and a direct financial interest in the activities of the Establishment; the Program was exhibited at the Establishment without authorization from or payment to Plaintiff, the exclusive holder of the commercial distribution license. *See* Plaintiff's Complaint, Doc. No. 1 at ¶¶ 3-6, 9-19, 21-22, 24-25 and Appendix, Exhibits A, B at ¶¶ 4-12, B(1), B(3), C, C(1), C(2), C(3), C(4), and C(5).

15.    In order for an unauthorized commercial establishment to receive a broadcast such as the Program, there must be some wrongful action such as employing residential cable and/or satellite equipment to circumvent commercial licensing requirements or engaging in similar illegal conduct to steal programming through internet streaming for residential/non-commercial use only. *See* Appendix, Exhibit B at ¶¶ 10-12; *Joe Hand Promotions, Inc. v. Maupin*, 2018 WL 2417840, at *6 (E.D.N.Y. May 25, 2018)("exhibitions of television programs broadcasted via the internet could serve as a basis for liability under Section 553 and 605"); and *Time Warner Cable v. Googies Luncheonette, Inc.,* 77 F. Supp.2d 485, 490 (S.D.N.Y. 1999)(when finding willfulness the court stated, "There can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems").

16.    Defendants' default alone establishes liability as ". . . . conduct on which liability is based may be taken as true as a consequence of the default." *Frame v. S-H, Inc.*, 967 F.2d 194, 205 (5th Cir. 1992)(citations omitted).

17.    Given the above, it is clear that Plaintiff has met its burden with respect to liability in this matter.    In this Motion, Plaintiff submits evidence to support damages under the Communications Act, specifically seeking damages under 47 U.S.C. § 605.

18.     In 1988, in an effort to further deter piracy, Congress amended the Communications Act to provide for more severe penalties for violations.  "The Committee wants to give both prosecutors and civil plaintiffs the legal tools they need to bring piracy under control. The Committee commends and encourages inter-industry efforts to deal with piracy, and believes the new remedies and increased penalties adopted through this provision will contribute to these important efforts."  *See U.S. v. Scott*, 783 F. Supp. 280, 282 (N.D.Miss. 1992)(referencing 1988 *U.S. Code Cong. & Admin. News* 5577, 5657-58).

## 2.     STATUTORY DAMAGES UNDER 47 U.S.C. § 605(e)(3)(C)(i)(II)

19.     As its first basis for relief, Plaintiff requests statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II).  *See Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 850 (11th Cir. 1990).[4]

20.     Pursuant to the Communications Act, the amount of statutory damages to which Plaintiff is entitled for each violation shall be not less than $1,000.00 and not more than $10,000.00 under 47 U.S.C. § 605(e)(3)(C)(i)(II).  For the reasons set forth herein, Plaintiff seeks statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) against Defendants in the amount of $10,000.00 for Defendants' violation of the Communications Act in connection with the Program.

21.     Statutory damages are appropriate where actual damages are difficult to prove. *See Lauratex Textile Corp. v. Allton Knitting Mills, Inc.,* 519 F. Supp. 730, 732 (S.D.N.Y. 1981); *Lottie Joplin Thomas Trust v. Crown Publishers, Inc.,* 592 F.2d 651, 657 (2d Cir. 1978). The lack of adequate proof of any particular element causes the Court to rely, within its discretion, on the

---

[4] It is in the Plaintiff's discretion whether to elect to receive actual or statutory damages. *Id. See also*, *Entertainment by J&J, Inc. v. Al-Waha Enterprises, Inc.,* No. H-01-2514, 2002 U.S. Dist. LEXIS 16247, at *17 (S.D.Tex. July 24, 2002) ("A majority of the courts that have dealt with a violation of both sections of the FCA award damages only under Section 605....")(citations omitted).

statutory limitations.  *See F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952).

22.     As stated above, and supported by the evidence attached to the Appendix and referenced herein, on the date of the Program, Defendants, themselves and/or through their agents, servants, and/or employees, intercepted and/or received or assisted in the interception and/or receipt of the telecast of the Program, broadcasted or assisted in the broadcast of the Program to the patrons at Defendants' Establishment, and broadcasted the Program to the patrons at Defendants' Establishment without paying any sublicense fees to Plaintiff. *See* Doc. No. 1 at ¶¶ 3-6, 9-19, 21-22, 24-25 and Appendix, Exhibits A, B, B(1), B(2), B(3), C, C(1) and C(2). The willfulness of Defendants' violation is also shown by advertising the broadcast of the intercepted Program on the entrance door of the Establishment's bathroom and on social media.    *See* Appendix, Exhibits B(3), C, and C(1).

23.     In the instant case, as more fully discussed below, it would be impossible to determine the full extent of the profits lost by Plaintiff and the additional damages sustained by Plaintiff because of Defendants' unlawful actions. Accordingly, Plaintiff elects to receive statutory damages.

24.     Because the statute defining statutory damage awards for violations of the Copyright Act of 1976, 17 U.S.C. § 101 et seq. (the "Copyright Act") is analogous to the Communications Act,[5] its case law is influential in analyzing the amount of statutory damages to

---

[5] 17 U.S.C. § 504(c)(1) provides, as follows:
Statutory damages. (1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.

which Plaintiff is entitled.[6]

25.      Applying the courts' analysis from their decisions under the Copyright Act, the lost income from the sale of the Program to Defendants' Establishment represents only a starting place for the determination of the amount of damages to which Plaintiff is entitled as a result of Defendants' wrongful acts.[7]  Factors to consider in determining a statutory damage award include: (1) the "fair market value of the rights infringed," (2) the "revenue lost by the plaintiff and profits gained by the defendant," (3) "the infringer's state of mind," and (4) "deterrence of future infringement." *See Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1544 (S.D.N.Y. 1991).  For an establishment with a capacity of 75 people, the sublicense fee would have been $1,475.00.  *See* Appendix, Exhibits B at ¶ 8, B(2), and B(3).

26.      Plaintiff should receive additional compensation as it has been deprived of the "value, benefits and profits derived" from the unauthorized broadcast of the Program to Defendants' Establishment and its patrons as well as the value of "business investment, business opportunities, reputation, and goodwill," in addition to the lost revenue which would have been derived from the delivery and exhibition of the Program to Defendants' Establishment and its

---

[6]According to the United States Supreme Court, when determining the applicable statutory damage award under the Copyright Act, the amount of profits lost by the copyright holder is not the only criteria for a Court to consider. *Woolworth*, 344 U.S. at 233. Rather, "a rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers. It would fall short of an effective sanction for enforcement of the copyright policy. The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct. The discretion of the court is wide enough to permit a resort to statutory damages for such purposes. Even for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy". *Id.* at 233.

[7] *See*, e.g., *Entertainment by J&J, Inc. v. Al-Waha Enterprises, Inc*., 219 F. Supp.2d 769, 776 (S.D. Tex. 2002) ("Merely requiring Al-Waha to pay the price it would have been charged to obtain legal authorization to display the [Program] does nothing to accomplish this objective of the statute. There would be no incentive to cease the violation if the penalty were merely the amount that should have been paid.")(citations omitted).

patrons. *See American Television and Communications Corp. v. Floken, Ltd.*, 629 F. Supp. 1462, 1466 (M.D.Fla. 1986).

27.     Types of damages suffered by Plaintiff and factors related to same include the following:

    a.  Plaintiff loses customers, which are unwilling and financially unable to compete with those unauthorized commercial establishments, which steal sports and other closed-circuit programming.

    b.  Because some unauthorized commercial establishments offer the stolen programming to their patrons for no fee or for a fee which is less than the authorized establishments, the legitimate commercial establishments with the right to broadcast closed-circuit programming attract fewer paying customers. As a result, the authorized commercial establishments fail to recover the sublicense fees paid, suffer the loss of patrons, and/or incur financial loss.

    c.  When the unauthorized commercial establishment advertises the availability of the stolen programming, the number of patrons at the unauthorized commercial establishment likely increases and, as a result, Plaintiff and the authorized commercial establishments suffer additional losses.

    d.  Theft of closed-circuit broadcasts such as the Program, by unauthorized commercial establishments such as Defendants' Establishment, adversely affects both Plaintiff and its customers. Plaintiff pays substantial fees to obtain the right to sublicense the broadcast of closed-circuit programming to authorized commercial establishments. Plaintiff's primary source of revenue is the sublicense fees which it charges to authorized commercial establishments for the right to broadcast closed-circuit sports and entertainment programming such as the Program.

*See* Appendix, Exhibit B at ¶¶ 5, 13-14.

28.     Each visitor of Defendants' Establishment is lost as a future patron of authorized broadcasts. *See Cox Cable Cleveland Area, Inc. v. King*, 582 F. Supp. 376, 381 (E.D. Ohio 1983). Plaintiff suffers ongoing loss to its goodwill and reputation and loss of its right and ability to control and receive payment for the transmission, because patrons viewing the pirated event at Defendants' Establishment would likely have become patrons of an authorized establishment

16

thereby increasing the value of the Program and Plaintiff's business opportunities.  *See* Appendix, Exhibit B at ¶¶ 5, 13-14; *see also Quincy Cablesystems, Inc. v. Sully's Bar, Inc.*, 640 F. Supp. 1159, 1161 (D. Ma. 1986).

29.    The continued viability of Plaintiff's business relies upon the willingness and ability of commercial establishments to pay sublicense fees for the right to broadcast closed-circuit sports and entertainment programming such as the Program. *See* Appendix, Exhibit B at ¶¶ 4-5, 13-14.  If such programming is made available to the public for no fee at unauthorized commercial establishments, which have not purchased the right to broadcast such programming, commercial establishments will find no reason to purchase the right to legally broadcast this type of programming. *See Id.*

30.    Given the benefits which Defendants received from the broadcast of the Program and the types of damages Plaintiff suffered, it is fair and reasonable to assess damages against Defendants and award to Plaintiff statutory damages in the amount of $10,000.00.

### 3.    DAMAGES FOR WILLFUL ACT UNDER 47 U.S.C. § 605(e)(3)(C)(ii)

31.    Plaintiff also requests damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) in light of Defendants' actions being willful and "for purposes of direct or indirect commercial advantage or private financial gain." In *ON/TV of Chicago v. Julien*, 763 F.2d 839, 844 (7th Cir. 1985), the Court of Appeals for the Seventh Circuit interpreted willful under the statute as "disregard for the governing statute and an indifference to its requirements." *Id.* at 844 (quoting *TransWorld Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985)).

32.    Defendants specifically and willfully acted to illegally intercept the transmissions of the Program for Defendants' commercial advantage, because Defendants could not have "innocently" accessed the broadcast of the Program.[8]  *See* Appendix, Exhibit B at ¶¶ 10-12.

33.    Defendants knew or should have known that it was wrong to receive, intercept, and divert the scrambled signal of the Program and to broadcast it in Defendants' commercial Establishment. *See KingVision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp.2d 438, 442 (S.D.N.Y. 2001); *see also Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp.2d 485, 490 (S.D.N.Y. 1999)(when finding willfulness the court stated, "there can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. *Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.*")(emphasis added).  *See also KingVision Pay-Per-View, Ltd. v. Valles*, EP-CA-179-DB, 2001 U.S. Dist. LEXIS 24268, at *9 (W.D. Tex. March 30, 2001)(Briones, J.)("While Defendants may not have been well-versed in the statutory restrictions on the unauthorized interception of satellite transmissions, the Court finds that *there must have been some knowledge on the part of Defendants* that such interception could not be had for free.")(emphasis added).

---

[8]  *See Joe Hand Promotions, Inc. v. Malespin*, 2001 U.S. Dist. LEXIS 2037, at *9-10 (S.D.N.Y. Feb. 27, 2001)(Nathaniel, J.)("The respective defendants elected not to enter into contracts with plaintiff to obtain the transmission of the Program. Their only means of obtaining the Program, and to avoid paying the legal subscription rate for a commercial establishment, would be: (a) using an illegal descrambler in a satellite receiver; (b) using a pirate cable box; (c) registering their respective commercial establishments as residential sites rather than commercial; and (d) ordering the Program for their respective residences and moving their residential cable boxes to their commercial establishments. The Court finds that employing ***any one*** of these means to defraud plaintiff would be evidence of willfulness and would support an award of enhanced damages.")(emphasis added).

34. Defendants' purpose and intent in exhibiting the Program was to secure a private financial gain and direct commercial advantage by pirating Plaintiff's licensed exhibition and infringing upon Plaintiff's rights while avoiding proper payment to Plaintiff as shown in the following evidence: [9]

    a. **Multiple televisions:** Patrons who entered the commercial Establishment viewed the pirated Program on multiple televisions. *See* Appendix, Exhibits B at ¶ 9 and B(3).

    b. **Advertisements**: The broadcast of the Program at the Establishment was advertised on the entrance door of the Establishment's bathroom and on social media. *See* Appendix, Exhibits B at ¶ 9, B(3), C, and C(1).

    c. **Sales:** The Establishment is a business that sold food and drinks on the date and during the broadcast of the Program. *See* Appendix, Exhibits A (Sales tax and alcohol permits/certificates), B at ¶ 9, and B(3) (Plaintiff's Auditor ordered a beer flight samples, two Oscar Blues Coffee Porter and a Bruschetta appetizer).

    d. **Attendance:** Plaintiff's Auditor counted approximately 40-55 people at the Establishment during the broadcast of the pirated Program at the Establishment. *See* Appendix, Exhibits B at ¶ 9 and B(3).

    e. **Urban area:** The Establishment is located in El Paso, Texas where a larger number of patrons can be drawn to the Establishment to view the pirated Program. *See* Appendix, Exhibits A, Exhibits B at ¶ 9 and B(3).

35. Given the above, Defendants' actions were clearly willful and for a commercial advantage warranting additional damages under the Communications Act.[10]

---

[9] *See J&J Sports Productions, Inc. v. Papagallos 1, Inc.*, No. A-08-CA-691-SS (W.D. Tex. April 17, 2009)(Sparks, J.) (Order) (Doc. No. 13)("The undisputed evidence establishes the [Program] was broadcast to paying customers of Defendants' commercial establishment and thus the violation was for commercial advantage or private gain.").

[10] *See Id.*

36.     Generally, it is reasonable to increase an actual or statutory damages award by a specific percentage to penalize Defendants for willful acts.[11]    Therefore, pursuant to Section 605(e)(3)(C)(ii), in addition to the reasons set forth above, the minimum amount of Twenty Thousand Dollars ($20,000.00)(or two times (2) the amount of statutory damages, if $10,000.00 in statutory damages awarded) should be awarded to Plaintiff.    The following authority also supports an award of additional damages:

a.   To deter future pirating of cable and satellite broadcasts. *See*, e.g., *KingVision Pay-Per-View, Ltd. v. Scott E.'s Pub, Inc.*, 146 F. Supp.2d 955, 959-60 (E.D.Wis. 2001) (discussing multipliers of three to eight (3 to 8) times the statutory damages as additional damages in order to deter future communication theft).

b.   To deter actions involving theft, fraud and conversion. *See Entertainment by J&J, Inc. v. Tia Maria Mexican Restaurant & Cantina, Inc.*, 97 F. Supp.2d 775, 778-779 (S.D.Tex. 2000)(Gilmore, V.)("[a] suit for illegal reception and broadcast of a cable signal implicates several areas of the law [including fraud and theft]."); and *ProStar v. Massachi*, 239 F.3d 669, 675 (5th Cir. 2001)(analogizes violation under Communications Act to conversion).

### F.  ATTORNEY'S FEES AND COSTS

37.     Plaintiff requests an award of attorney's fees and costs pursuant to Section 605(e)(3)(B)(iii).    Under Section 605(e)(3)(B)(iii), the award of attorney's fees is mandatory. According to Section 605(e)(3)(B)(iii), "[t]he Court... shall direct the recovery of full costs, including awarding reasonable attorneys' fees..."

38.     By the language of the statute, Plaintiff's costs should not be limited to taxable costs under 28 U.S.C. § 1920.  47 U.S.C. § 605 allows for the recovery of "full costs."  "[Plaintiff's] costs associated with retaining a private process server are not taxable under § 1920...

---

[11] *See* e.g., *Lauratex*, 519 F. Supp. at 733 (increase of seven times the actual damages for willful acts); *Cable/Home*, 902 F.2d 829 (additional damages of five times actual damages for willful conduct); and *Entertainment by J&J, Inc.*, 219 F. Supp.2d at 777 (S.D. Tex. 2002)(the court awarded three times statutory damages for willful violations).

Nevertheless, because [Plaintiff] is entitled to recover its 'full costs,' not merely its taxable costs under § 1920, the Court will award [Plaintiff] $675.00 in connection with service of process. *Cf. Kingvision Pay-Per-View*, 426 F.Supp. 2d at 67 (concluding 'full costs' under § 605 includes investigative costs); *Joe Hand Promotions, Inc. v. Rascals Cafe, LLC*, No. 4:11-2135-TLW, 2012 WL 4762142, at *6 (D.S.C. Aug. 31, 2012)(awarding 'investigative costs,' 'postage charges,' and 'courier charges' under § 605), *report and recommendation adopted*, 2012 WL 4762452 (D.S.C. Oct. 5, 2012); *J&J Sports Prods., Inc. v. Molina & Reyes Enters., LLC*, No. SA-17-CV-278-XR, 2017 WL 10841353, at *2 (W.D. Tex. Nov. 29, 2017)(awarding investigative fees)." *See Joe Hand Promotions, Inc. v. SNP Hookah Lounge and Grill LLC, et al.*, No. 4:18-cv-01666 (Memorandum and Order, Doc. #39)(S.D. Tex. July 31, 2019)(Atlas, J.).

39.     Plaintiff seeks an attorney's fees award for the prosecution of this action against Defendants through the default judgment requested. *See* Appendix, Exhibit D.  In addition, Plaintiff seeks an award of costs, which costs have been proven by affidavit with the attached service of process invoices and copy invoices.  *See* Appendix, Exhibits D at ¶ 7 and D(1).

## G. CONCLUSION

40.     In conclusion, the averments that Defendants, willfully intercepted and/or received the closed-circuit telecast of the Program, and that Defendants exhibited the Program in Defendants' commercial Establishment without authorization and without paying the sublicensing fee to Plaintiff for the purposes of attracting paying customers, patrons, and guests are deemed admitted and supported by evidence. Accordingly, pursuant to the Communications Act and the statutory damages permitted thereunder, Plaintiff seeks the entry of a default judgment in favor of Plaintiff and against Defendants for the relief sought in this Motion.

## H. PRAYER

Plaintiff respectfully requests that the Court sign and cause to be entered a default judgment in favor of Plaintiff, JOE HAND PROMOTIONS, INC. and against Defendants, YOU DROPPED SOMETHING ENTERPRISES, LLC, d/b/a UNDISPUTED CRAFT, DARRELL A. DAUGHTRY, AND CHRISTOPHER MADRID, a/k/a CHRIS MADRID awarding Plaintiff;

(1)     Statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) from Defendants, jointly and severally, in the amount of $10,000.00; and

(2)     Additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) from Defendants, jointly and severally, in the amount of $20,000.00; and

(3)     Attorney's fees from Defendants, jointly and severally, in the amount of the hourly time presented in the Affidavit for Attorney's Fees and Costs; and

(4)     Costs from Defendants, jointly and severally, in the amount of $839.00; and

(5)     Post-judgment interest at the highest lawful rate; and

(6)     Such other and further relief to which Plaintiff is entitled.

Respectfully submitted,

*/s/ Jamie King*
Jamie King
Attorney-in-Charge
State Bar No. 24043755
P.O. Box 5757
Kingwood, Texas 77325
(832) 584-0106 Telephone
(888) 247-0443 Facsimile
jamie@jamiekingpc.com

ATTORNEY FOR PLAINTIFF,
JOE HAND PROMOTIONS, INC.

22

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 30th day of November, 2022, a true and correct

copy of the foregoing was served as follows:

*Via U.S. Mail, Postage Prepaid and Certified Mail, Return Receipt Requested upon:*

You Dropped Something Enterprises, LLC,      Darrell A. Daughtry
d/b/a Undisputed Craft House                1881 Saul Kleinfeld Dr.
c/o Darrell A. Daughtry                      El Paso, Texas 79936
1881 Saul Kleinfeld Dr.
El Paso, Texas 79936


Christopher Madrid,                          Jerome Isaac
a/k/a Chris Madrid                           512 Meldon Rd.
1881 Saul Kleinfeld Dr.                      Evans, Georgia 30809
El Paso, Texas 79936


*/s/ Jamie King*                             11/30/2022
Jamie King                                   Date